UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KELLI B. PARKER, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   2:08-CV-1091-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

The plaintiff, Kelli B. Parker, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Ms. Parker timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Parker was thirty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at

23, 43, 429.)  Her past work experience includes employment as an anesthesia technician, day care teacher, and customer service representative. (Tr. at 23, 71.) Ms. Parker claims that she became disabled on February 1, 2005, due to chronic moderately severe cervical pain, fibromyalgia, and osteoarthritis.  *Id*. at 430, Doc. 8 at 7.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis

stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  (*Id.*)  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

   The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work,

the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Parker "meets the insured status requirements of the Social Security Act through June 30, 2010." (Tr. at 17.) She further determined that Ms. Parker has not engaged in substantial gainful activity since the alleged onset of her disability. *Id*. According to the ALJ, Plaintiff has the "following severe combination of impairments: history of right knee fracture status post surgical repair, osteoarthritis, depression, post traumatic stress disorder (PTSD), fibromyalgia, degenerative disk disease status post cervical fusion, and bilateral carpal tunnel syndrome." *Id*. However, she found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id*. at 19. The ALJ determined that Ms. Parker has the residual functional capacity to "perform sedentary work with a sit or stand option." *Id*. at 20.

The ALJ then determined Plaintiff cannot perform any past relevant work. (Tr. at 23.) However, given her age, education, work experience, and RFC, the ALJ determined that Ms. Parker could perform specific jobs that exist in a significant number in the national economy based on her RFC. *Id*.

at 32. These jobs include work as a cashier (7,000 jobs in Alabama), information clerk and receptionist (5,000 jobs in Alabama), and assembler (2,000 jobs in Alabama). *Id*. Accordingly, the ALJ entered a finding that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 1, 2005 through the date of this decision." *Id*. at 24.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Ms. Parker alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for one reason. (Doc. 8.) Plaintiff claims that the ALJ did not afford proper consideration to her subjective complaints of pain. *Id.*

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about

the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted).

In this case, the ALJ found that Ms. Parker met the first prong of the Eleventh Circuit's pain standard, but she did not believe that the evidence confirms the severity of the alleged pain arising from that condition or that Ms. Parker's objectively determined medical condition could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. at 22.)

Plaintiff claims the ALJ "relied on the treatment note from Dr. Morris right after the Plaintiff's surgery and failed to give sufficient weight to the numerous records which document Plaintiff's continued pain and attempts

to relieve the same." (Doc. 8 at 9.) In making her determination, the ALJ considered the opinion of Dr. Morris, as well as the opinions of several other doctors.

Plaintiff first saw Dr. E. Carter Morris, III on November 8, 2004, because of neck pain, headaches, and numbness in her hands. (Tr. at 18.) At the time, Plaintiff's medications were listed as Methadone, Xanaz, Zyrtec, Flonase, Zanaflex, Paxil CR, Imitrex, Milk of Magnesia, Topamax, Ambien, Fioricet, and Adderall. While Plaintiff did have a large herniated disk, Dr. Morris found she had "5/5 muscle strength in all muscle groups and her reflexes in all extremities was 4/4," and her gait and station were normal. *Id.* Dr. Morris recommended a cervical diskectomy and fusion, which he performed on Plaintiff on February 4, 2005. On February 14, 2005, Plaintiff returned to Dr. Morris for a follow up. Dr. Morris noted she was "doing well postoperatively," and that while she did have a small hematoma under her incision, it was not obstructing her breathing and would go away without treatment. *Id.* at 18-19.

In addition to Dr. Morris, and as noted by the ALJ, Plaintiff went to Dr.

E. Lyle Cain with complaints of severe right knee pain on October 23, 2003. (Tr. at 18.) Dr. Cain scheduled an MRI. On November 10, 2003, Plaintiff returned to Dr. Cain for a two week follow up post right knee arthroscopy, and reported her pain to be a two on a scale of one to ten. *Id*. Plaintiff again returned to Dr. Cain on November 15, 2004, with complaints of bilateral knee pain. Dr. Cain found "no palpable bone abnormalities and she was distally neurologically intact." He diagnosed her with right knee degenerative joint disease and gave her an unloader brace, along with a prescription for Mobic. *Id*.

As further noted by the ALJ, Plaintiff was also seen by Dr. Cheryl Goyne. She first visited Dr. Goyne on September 15, 2005, at which point she was diagnosed with "neuralgia secondary to ear surgery, chronic neck pain secondary to cervical disk surgery, bilateral carpal tunnel syndrome, low back pain secondary to degenerative disk disease, and a history of two recent falls." *Id*. at 19. On October 4, 2006, Plaintiff returned to Dr. Goyne for a medication refill. Dr. Goyne noted Plaintiff reported good pain control with her medications. *Id*. On January 4, 2007, it was noted by Dr. Goyne's

office that Plaintiff failed to show up for several of her appointments, but that she was doing well with medications. Finally, on May 2, 2007, Plaintiff complained to Dr. Goyne of new weakness in her legs, but her pain was stable.[1] *Id.*

Lastly, the ALJ noted that, on January 22, 2007, Plaintiff was treated by Dr. Greg E. Eudy, due to overall pain, sleep disturbance, depression, and anxiety. *Id*. Plaintiff also claimed that Methadone did not substantially help with her pain symptoms. *Id*. Dr. Eudy diagnosed Plaintiff with fibromyalgia. *Id*. While Plaintiff complained of an increase in pain, the ALJ found "there is no objective findings that would support such an increase and there was no major change in her plan of treatment as she testified; but [Dr. Eudy] continued to use Methadone to treat her pain." *Id*. at 22.

---

[1] Plaintiff further discussed Dr. Goyne's records from the period of July 3, 2007 through January 22, 2008, as well as Dr. Eudy's records from August 6, 2007. (Doc. 8 at 8.) These records noted Plaintiff was still taking Topomax, Zanaflex, Adderall and Methadone for pain on August 2, 2007; was re-started on Lyrica for pain; was trying to sleep in a bed for the first time in three years on October 2, 2007; and, on January 22, 2008, showed an increase in neck and low back pain. (Doc. 8 at 8, Tr. at 410-414, 417-419.) However, these records were not part of the record at the time of the ALJ's decision on October 15, 2007. Plaintiff does not acknowledge these records were absent from the record on October 15, 2007, nor does he challenge the ALJ's decision based on new evidence. Regardless, the records do not indicate any change in Plaintiff's treatment plan, other than re-starting Plaintiff on Lyrica, and therefore, it does not appear they would have changed the ALJ's opinion.

In addition to the medical records, the ALJ took note of Plaintiff's own testimony, although he did not find them credible. (Tr. at 22.) Plaintiff claimed walking, standing, or sitting for long periods of time caused her pain; she had not slept in a bed for quite some time; the amount of house work she could do was limited; and she had been diagnosed with and receiving treatment for depression. *Id.* Plaintiff also testified she took Methadone for pain and took Adderall to prevent the drowsiness caused by the Methadone. Further, Plaintiff claimed that when she took all *fourteen* of her medications daily, her pain level was usually no more than a five on a scale of one to ten. *Id.* In contrast to Dr. Goyne's records that Plaintiff did not show up for several appointments, Plaintiff claimed she did not recall being a "no show" for any appointments. *Id.* However, Plaintiff also stated that while she had been receiving monthly medical treatments, she had not been going to the doctor as often because she no longer had insurance. *Id.*

The ALJ does acknowledge Plaintiff's "past medical conditions, including resulting joint degeneration, combined with the claimant's

fibromyalgia, carpal tunnel syndrome, and osteoarthritis would restrict her to performing no more than sedentary work," and that "[f]or a short period of time she would not have been able to perform sedentary work." (Tr. at 22.) However, the ALJ concluded that "after sufficient time for recovery from the cervical diskectomy, a period that was less than one year, she was capable of performing sedentary work." *Id.*

Finally, Plaintiff claimed that, before she left work, she missed at least one day each week because of her medical problems. *Id.* In conjunction with this testimony, the Vocational Expert ("VE") testified that if Plaintiff experienced marked difficulties in either pain or depression more than one day a month, it would "likely preclude the ability to perform these jobs."[2] (Tr. at 443-44.) The ALJ never mentioned this portion of the VE's testimony.

Based on the medical evidence of record, and on Plaintiff's testimony, it does not appear to this Court that substantial evidence supported the ALJ's decision. It appears to this Court that the ALJ specifically addressed

---

[2] *See supra* p. 5.

Plaintiff's allegations of pain in her opinion, however, there was not substantial evidence to support her decision to reject Plaintiff's testimony. Given that Plaintiff testified to taking fourteen medications daily, including Methadone, and given the medical records of Dr. Goyne and Dr. Eudy which support Plaintiff's complaints of pain, and the VE's testimony, there is objective medical evidence to confirm the severity of the alleged pain and the objectively determined medical conditions could be of such severity as to reasonably expect the pain.  It appears to this Court that the ALJ arbitrarily rejected Plaintiff's allegations of pain, and therefore this case should be remanded to the ALJ to reconsider Plaintiff's testimony in conjunction with the medical records of evidence.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Parker's arguments, the Court finds that the ALJ's decision is not supported by substantial evidence.  For the foregoing reasons, the ALJ's denial of benefits is **vacated**, and the case is **remanded** to the ALJ for further

proceedings consistent with this opinion.  A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this 25th day of August 2009.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671